SAMUEL FOREMAN and others *vs.* JOSHUA FOREMAN and others.

It was the intention of the legislature, by the statute authorizing the sale of lands belonging to infants, to preserve the funds produced from the sale, in the character of real estate; in order that it might go to the representatives of the infant, who would have taken it as real estate.

Under that statute, the proceeds of the sale of infants' real estate, are, for all the purposes of distribution, to be regarded as real estate, in case the infant dies before attaining his majority.  *Per* MASON, J.

And the statute having impressed such proceeds with the properties of real estate, for the benefit of heirs, its provisions will continue to operate upon the estate, upon the death of the owner, after he becomes of age; in the absence of any act or intent, on his part, changing the character of the property.

Accordingly, where, upon a sale of the real estate of an infant, a bond and mortgage was given by the purchaser, upon the same premises, to secure the purchase money, and the infant died, after he attained his majority, being still the owner of such bond and mortgage, it was *held* that the moneys secured thereby and which remained unpaid at the time of his death, belonged to his heirs, and must be distributed among them as real estate, according to the statute of descents.

CHARLES W. FOREMAN, deceased, being an infant, and being seised of certain lands in the county of Onondaga, by his general guardian Laban Hoskins, presented a petition on or about the 21st day of July, 1834, to the vice chancellor of the seventh circuit, for the sale thereof.  And such proceedings were had thereon that said lands were sold to Richard Adams, for three thousand dollars, and to secure the purchase money a bond and mortgage was by order of the court executed by Adams to said Laban Hoskins, guardian as aforesaid, in trust for the said

Charles W. Foreman, bearing date January 29th, 1835, payable in 12 years from the 1st of April then next, with annual interest. On the 1st day of October, 1847, the said Charles W. having attained his majority, made a settlement with his said guardian in relation to the interest received upon the bond and mortgage. No part of the principal of the said bond and mortgage was then paid. The bond and mortgage was produced and laid upon the table where the parties were doing their business, and the said Charles W. gave the said Laban a release from all liabilities growing out of his trust as such guardian, and acknowledging therein the receipt of the said $3000 bond and mortgage, but the said bond and mortgage was not assigned over to the said Charles W. by the said Laban, nor delivered in any other manner than above stated. The said Charles W. at the same time gave to the said Laban a power of attorney, authorizing him to hold the said bond and mortgage, and receive the interest thereon, and in his discretion to receive or collect the principal if he thought it best so to do. The whole matter was left to his discretion; he retaining the bond and mortgage. The matter rested in this situation up to about the 14th day of March, 1848, when the said Charles W. departed this life, intestate, having made no other disposition or change of said bond and mortgage than is above stated. On or about the 11th day of April, 1848, letters of administration were granted upon the estate of Charles W. Foreman, to the plaintiffs. And on or about the 12th day of April, 1848, the said Laban Hoskins continuing to hold the said bond and mortgage, the whole amount of principal and interest being due, did under his hand and seal transfer the said bond and mortgage to the plaintiffs as administrators, as aforesaid. And the plaintiffs commenced this suit, and summoned the heirs and next of kin, and asked the judgment of this court whether the moneys, secured by the bond and mortgage, should be distributed according to the statute of distributions, or the law of descents.

*J. Foreman*, for the plaintiffs.

*Underwood & Clarke*, for the defendants.

Mason, J. Courts of equity, for the purpose of protecting the rights of parties, who as heirs or distributees, would otherwise be entitled to the fund, are careful not to permit guardians to change real estate into personal, or personal into real. And with that view it is the constant practice of the courts to hold lands purchased by the guardian, with the infant's personal estate, or the rents and profits of the real estate, to be personalty and distributable as such; and on the other hand to treat real property turned into money as still, for such purpose, real estate. (2 *Story's Eq. Jur.* § 1357. 6 *Ves. R.* 6. 2 *Id.* 265, *note* 2. 1 *Id.* 257. 19 *Id.* 123.) And Lord Eldon says, in the case of *Ex parte Philips,* (19 *Ves. R.* 123,) that "in the case of an infant, it is settled that as a trustee out of court can not change the nature of the property, so the court of chancery, which is only a trustee, must act as the trustee out of court." And consequently, when the court directs a change of the property of an infant, it directs the new investment to be in trust for the benefit of those who would be entitled to it, if it had remained in its original estate. (2 *Story's Eq. Jur.* 1357.) These are the principles which governed the courts of equity in the absence of any statutory provision. It is provided, however, by statute, in this state, that no sale of the real estate of an infant shall give to such infant any other or greater interest or estate in the proceeds of such sale, than he had in the estate so sold, but the said proceeds shall be deemed real estate of the same nature as the property sold. (2 *R. S.* 196, § 186.) I am satisfied that the intention of this statute was to preserve the funds produced from the sale of infants' real estate, in the character of real estate, in order that it might go to the representatives, who would have taken it as real estate. This was adjudged to be the intent of the statute by Vice Chancellor Sandford in the case of *Davison* v. *De Freest,* (3 *Sandf. Ch. Rep.* 456, 464.) This, it seems to me, is apparent from the language of the statute itself. And besides, the revisers, in their notes, (3 *R. S.* 675,) refer to the session laws of 1815, from which this provision is taken, and which statute declares that "*the proceeds of such* real estate shall be considered relative to the statute of descents, and

Foreman *v.* Foreman.

distributions, and for every other purpose as if the said real estate had not been sold." There can be no doubt, in my opinion, but we are, under this statute, to regard the proceeds of the sale of infants' real estate, for all the purposes of distribution, as real estate, in all cases where the infant dies before he attains his majority. And I am inclined to think that the statute having impressed the funds secured by this bond and mortgage with the properties of real estate, and that too for the benefit of heirs, the statute must be deemed to have its operation upon the estate, even upon the death of the party after majority attained. It seems to me this must be so in all cases, in the absence of any act or intent of the deceased changing the character of the property. It is a familiar rule in equity jurisprudence, that moneys being once impressed with real uses, and one of those uses being for the benefit of the heir, the impression for his benefit shall remain. ( *Wheldale* v. *Partridge*, 8 *Ves.* 227, 235. 2 *Story's Eq. Jur.* § 214.) In the case of *Wheldale* v. *Partridge*, Lord Eldon said: "Money being once clearly and plainly impressed with real uses, as land, and one of those uses being for the benefit of the heir, the impression will remain for his benefit." Again he says, "To put an end to that impression it must be shown either that the money was in the possession of a person who had in himself both the heirs and executors, or he must do some act to denote a change of his intention as to the devolution of the property upon either." And the following cases may be referred to as sustaining the same doctrine. ( *Walter* v. *Maunde*, 19 *Ves.* 424, 428, 429. *Biddulph* v. *Biddulph*, 12 *Id.* 161. *Wheldale* v. *Partridge*, 5 *Id.* 388. *Thornton* v. *Hawley*, 10 *Id.* 130. *Lowes* v. *Hackward*, 18 *Id.* 168, 171. *Lingen* v. *Sowray*, 1 *P. Wms.* 172. *Edwards* v. *Countess of Warwick*, 2 *Id.* 171. 1 *Ves.* 204, *notes* 1, 2, 3. 1 *Brown's Ch. Rep.* 238.) The rule is a familiar one that statutes are to be construed in reference to the principles of the common law in force at the time of their passage; for it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required. (1 *Kent's Com.* 464, 3d ed.) Applying this rule to the case under con-

sideration, it is but fair to presume that when the common law said that money once impressed with real uses for the benefit of the heir, the impression shall remain for his benefit, unless the intent on the part of the deceased to change its character is made to appear, the legislature must be presumed to have intended, by the statute under consideration, which impresses real uses for the benefit of the heir upon the moneys arising from infants' real estate sold, that such impression shall remain, unless the intention of the infant to devolve a different character upon it, expressed after he obtained his majority, be made to appear.

It seems to me quite clear that the statute under consideration impresses real properties and uses upon the bond and mortgage in question, for the benefit of the heir during the minority of the infant, absolutely; and that such impression will remain after he has attained his majority, down to the time of his death, unless his intention to change its character be shown.   And it is sometimes a question of nice consideration and intrinsic difficulty to determine what circumstances do or do not amount to proof of an intention to convert real property into personal, or personal into real.   (2 *Story's Eq. Juris.* § 1214.)   Assuming, then, that if Charles W. Foreman had died before he attained his majority, the moneys secured by the bond and mortgage in this case would have to be distributed by the plaintiffs to his heirs at law, upon whom the real estate would have descended, it becomes important to inquire whether the case before the court discloses any intention on his part to change its character, or to devolve upon it a different direction.   I feel constrained to say, after a careful examination of this case, that I have not been able to discover the evidence of such intention. The fact of his settling with his guardian and giving a release from all liabilities growing out of his trust duties, and acknowledging in the same release the receipt of the bond and mortgage by himself, and the giving back the bond and mortgage to his guardian, with the power of attorney, all of which transactions and instruments must be read together in determining the rights of these parties, did not change in any respect, in my

opinion, the character thereof, or afford any evidence of his intention to convert or change it. The power of attorney does not show that he intended to change it. It is true he confers upon Mr. Hoskins, by this instrument, the power to receive the interest on the bond and mortgage; and he authorizes him, whenever in his discretion he shall think proper, to receive or collect the principal, and upon the receipt thereof to reinvest and loan out the same; not, however, in any manner either directing him to receive it, or collect, or reinvest it, but leaving it entirely to his discretion. And besides, this bond and mortgage was given to Hoskins, the guardian, for the benefit of Charles W. and was never by Hoskins assigned over to him; and it should be borne in mind that the bond and mortgage was given upon the very land of the infant which was sold, and to secure the purchase money; and the purchase money therefore may be said to have always remained a lien upon the land. When the law has impressed real properties and uses upon moneys, it is necessary, in order to put an end to that impression, that it be shown either that the party entitled to the property and having a right to elect in what shape he will take it, has declared that election, or done some act denoting his intention in relation thereto; or the property must, according to an expression used in some of the cases, *be at home;* that is, the person being the absolute owner must have in himself the entire qualification of heir and executor. He must not only have the *jus in re,* but no other person must have an outstanding *jus ad rem.* In that case, if he makes no declaration of his intention in relation to it, it shall go according to the quality in which it was left at his death. (1 *Brown's Ch. R.* 238, note 21, *and cases there cited; also* 7 *Bro. P. C. Toml. ed.* 530.) In accordance with the principles above laid down, it was adjudged in the case of *Scull* v. *Jernigar,* (2 *Dev. & Bat.* 44,) that the proceeds of land sold, to which an infant is entitled, remains real estate until the infant comes of age and elects to take them as money; and that if the infant be a female and marries, and her guardian to whom the proceeds of such sale had been paid by order of the court of equity, pays the same to·

her husband, upon her death they will descend as land to her real representatives ; and this whether she married and died before or after she become of age ; provided in the latter case she never elected herself, while sole, to take such proceeds as money, nor consented in the manner provided by law, after marriage, that her husband should so take them. I am of opinion, therefore, for the reasons above stated, that the moneys in this case must be distributed according to the statute of descents ; and I direct a judgment accordingly. The moneys may be paid into court and thus distributed.

SARATOGA SPECIAL TERM, October, 1849.    *Willard,* Justice.